Robin F. Wynne, Justice, concurring in part and dissenting in part. I agree "with the majority’s conclusion to affirm appellant’s convictions. However, because I believe that the trial court erred by denying appellant’s motion to suppress the blood-alcohol testing results, I would affirm the trial court’s sentencing order on the basis that the trial court’s error was harmless in light of the other evidence at trial that appellant was guilty of driving while intoxicated. Arkansas Code Annotated section 5-65-205(a)(1) (Supp. 2013) states, If a person under arrest refuses upon the request of a law enforcement officer to submit to a chemical test designated by the law enforcement agency, as provided in § 5-65-202, no chemical test shall be given, and the person’s motor vehicle operator’s license shall be seized by the law enforcement officer, and the law enforcement officer shall immediately deliver to the person from whom the motor vehicle operator’s license was seized a temporary driving permit, as provided by § 5-65-402. At issue in this appeal is the impact of the phrase “no chemical test shall be given” in the above-quoted statutory language. Appellant contends that the inclusion of that language means that no test may be conducted under any circumstances unless provided for by another statute, such as Arkansas Code Annotated section 5-65-208, which mandates testing following an accident that results in a loss of human life or raises reason to believe that loss of human life will occur. The trial court found that section 5-65-205(a)(l) does not preclude obtaining a 112sample for testing pursuant to a warrant because the legislature did not intend this result when it passed the statute. The State argues, in this same vein, that section 5-65-205 was meant to apply only to warrantless seizures of a sample for testing. Although this case presents an issue of first impression in Arkansas, other states have considered similar arguments involving substantially similar statutory language and have reached different conclusions. In State v. Smith, 134 S.W.3d 35 (Mo.Ct.App.2003), a Missouri Court of Appeals, when considering this same issue under the refusal provision of Missouri’s implied-consent statute, which stated that if a person under arrest for suspicion of DWI refused to submit to a test then “none shall be given,” the court held that the clause did not prohibit a court from issuing a search warrant to obtain a sample of a defendant’s blood for chemical testing. In so holding, the court stated that the use of the passive voice in the statutory' language meant that it was directed at police officers and not a court, meaning that it applied only to warrantless searches by police.[1] In considering its own refusal provision, which contained the phrase, “none shall be given,” the Georgia Supreme Court held that the provision did not allow for the issuance of a warrant to obtain a sample for testing. State v. Collier, 279 Ga. 316, 612 S.E.2d 281 (2005). In so holding, the court stressed the mandatory nature of the usé of the word “shall” and noted that the legislature had put into the statute sanctions for a refusal to submit that did not include the Impossibility of testing being compelled through a warrant. Of particular interest, the court described the reasoning employed by the Missouri Court of Appeals in Smith and a Texas Court of Criminal Appeals in Beeman v. State, 86 S.W.3d 613 (Tex.Crim.App.2002), as “strained,” “unpersuasive,” and “made in ignorance of express statutory language.” I agree with the Georgia Supreme Court that the analysis used by the Missouri court in Smith is nonsensical. I believe that the reasoning used by the Georgia court in Collier and other state courts that have concluded that language similar to that employed in Arkansas’s refusal provision prohibits the use of a search warrant to obtain a sample for testing[2] is better reasoned. As stated above, our refusal provision states that, in the event of a refusal by a defendant, no test shall be given. The first rule of statutory construction, to which all others must yield, is to give effect to the intent of the legislature. Stapleton v. M.D. Limbaugh Constr. Co., 333 Ark. 381, 969 S.W.2d 648 (1998). We first seek the legislative intent by giving the words of the statute their usual and ordinary meaning in common language. R.N. v. J.M., 347 Ark. 203, 61 S.W.3d 149 (2001). If the language of the statute is not ambiguous and plainly states the legislature’s intent, we will look no further. ERC Contractor Yard & Sales v. Robertson, 335 Ark. 63, 977 S.W.2d 212 (1998). Here, the language employed by the legislature is clear and unambiguous. Therefore, 114the circuit court erred by determining the intent of the legislature to be different than that clearly expressed by the legislature itself in passing the statute. If the legislature did intend for samples to be obtained by warrant, then it should amend the statute to reflect this. Under the statute as currently worded, this court would be required to impose an exception for searches by warrant where none exists. I further believe that the trial court and State’s reliance on Arkansas Rules of Criminal Procedure 12.3 and 18.1 are misplaced. Rule 12.3 allows for a warrantless search of an accused’s blood stream, body cavities, and subcutaneous tissues under certain exigent circumstances in order to preserve evidence that might be destroyed in the period of delay needed to obtain a warrant. This was not a warrantless search, and while a search authorized by a warrant is preferable from a due process standpoint, I have concern about using Rule 12.3 to override section 5-65-205(a)(1), as it could open the door for warrantless searches in this type of situation, which would render the statute meaningless. This would be particularly unnecessary in this case, because it is not as though BAC results are the only evidence that can be used to prove DWI. Also, I do not believe that a rule of criminal procedure that generally states what is constitutionally permissible with regard to a search should be used to override a statute that specifically addresses a type of search. Rule 18.1 allows a judicial officer to require a defendant to permit taking samples of blood. However, the commentary to the Rule makes it clear that this Rule applies to taking such samples for identification purposes, which was not the purpose of taking appellant’s blood sample. I do not believe that Rule 18.1 applies in this case. For these reasons, I believe that the trial court’s ruling on the motion listo suppress was in error. That, however, is not the end of the necessary analysis. We will not reverse for evidentiary error absent a showing of prejudice. Bruner v. State, 2013 Ark. 68, 426 S.W.3d 386. The trial court determined that appellant was guilty of DWI based on the testimony by Sergeant Hahn regarding appellant’s physical state and the indications of alcohol use that the sergeant observed. The trial court never mentioned the BAC results in its oral pronouncement of guilt from the bench. The testimony by Sergeant Hahn was sufficient to show, beyond a reasonable doubt, that appellant was impaired due to alcohol consumption while driving his vehicle. Thus, the BAC results were not necessary to obtain the conviction. I would affirm the sentencing order on the basis that the trial court committed harmless error by denying appellant’s motion to suppress. . In support of its analysis, the majority cites the decision of the Indiana Court of Appeals in Brown v. State, 774 N.E.2d 1001 (Ind.App.2002), in which the court held that Indiana’s refusal provision did not preclude the issuance of a warrant. However, the statute at issue in that case did not contain a provision stating that upon refusal, no test would be given. . See State v. DiStefano, 764 A.2d 1156 (R.I.2000); State v. Adee, 241 Kan. 825, 740 P.2d 611 (1987); State v. Berry, 121 N.H. 324, 428 A.2d 1250 (1981); State v. Hitchens, 294 N.W.2d 686 (Iowa 1980); State v. Steele, 93 N.M. 470, 601 P.2d 440 (App.1979); State v. Bellino, 390 A.2d 1014 (Me.1978).